HAWKS ENTERPRISES, INC., d/b/a Hawks Mobile Homes and Jim Morgan v. Phillip ANDREWS and Deborah Andrews

CA 01-359                                   57 S.W.3d 778

Court of Appeals of Arkansas
Division III
Opinion delivered October 31, 2001

*Friday, Eldredge & Clark, LLP*, by: *Scott J. Lancaster* and *Bruce B. Tidwell*, for appellants.

*Baxter, Jensen, Young & Houston*, by: *Perry Y. Young*, for appellees.

ANDREE LAYTON ROAF, Judge. Hawks Enterprises, Inc., d/b/a Hawks Mobile Homes, and Jim Morgan appeal from the denial of their motion to dismiss or to stay proceedings pending arbitration and to compel arbitration, in an action filed against them by the appellees, Phillip and Deborah Andrews, in connection with the purchase of a mobile home. On appeal, Hawks and Morgan argue that the trial court erred in 1) refusing to dismiss the action in favor of mandatory arbitration, and 2) refusing the alternative remedy of staying the litigation pending completion of arbitration. We affirm.

In December 1999, the Andrews contracted to purchase a mobile home from Hawks. Morgan was the agent who sold the Andrews the home. The Andrews traded in another mobile home, made a small down payment, and financed the remaining balance of

$45,079. The Andrews signed a contract ("Sales Contract"), dated December 6, 1999, that contained the specifications of the mobile home and terms of the purchase.

The Andrews also executed a separate "Manufactured Home Retail Installment Contract Security Agreement" ("Installment Contract") dated December 20, 1999, for financing of the unpaid balance. The Installment Contract contained an arbitration clause under which the Andrews agreed to settle any "disputes, claims or controversies arising from contract or the relationships which result from this contract" by arbitration. The clause also provided that the arbitration agreement was governed by the Federal Arbitration Act. The Sales Contract signed December 6, 1999, did not contain an arbitration clause.

On August 23, 2000, the Andrews filed suit against Hawks and Morgan for misrepresentation, negligence, and breach of contract. According to the complaint, the mobile home received by the Andrews did not meet the specifications they requested in the Sales Contract. The Andrews alleged, among other things, that Hawks and Morgan intentionally substituted a blank Sales Contract signed by the Andrews for the completed Sales Contract that contained the negotiated specifications.

On September 12, 2000, Hawks and Morgan filed a motion to dismiss with an alternative motion to stay the judicial proceeding and compel arbitration in which they contended that the court lacked jurisdiction and that the arbitration agreement governed the claims alleged in the complaint. They also asserted improper venue and failure to state a claim under Ark. R. Civ. P. 12(b)(6). The trial court denied the motion to dismiss and a subsequent motion to clarify, finding that Hawks and Morgan "had not explicitly made the [Sales Contract] subject to the arbitration clause," that both the Sales Contract and Installment Agreement had integration clauses stating that they contained the entire agreement, that both appeared to be separate and separately enforceable and that "at best, this situation presents an ambiguity which would be construed against the party preparing the documents. . . ."

On appeal, Hawks and Morgan argue that the trial court erred in refusing to either dismiss the complaint or stay the litigation in favor of arbitration. In support of their arguments, they rely to a great extent on case law from federal courts regarding the construction of arbitration agreements. They assert, in essence, that the use of a broad arbitration clause in the Installment Contract indicates

the intent of the parties to submit all disputes to arbitration, despite the absence of such a clause in the Sales Contract. Hawks and Morgan rely on two federal cases, *Fleet Tire Serv. of North Little Rock v. Oliver Rubber Co.*, 118 F.3d 619 (8th Cir. 1997), and *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34 (5th Cir. 1990), in support of this argument. In *Fleet Tire*, the parties first entered into a licensing agreement containing a broad arbitration clause in 1990. In 1995, Fleet Tire prepared and obtained the signature of Oliver Rubber's sales agent on a letter purporting to grant Fleet Tire an exclusive market with its licensed area. Fleet Tire subsequently sued Oliver Rubber for breach· of the 1995 agreement. The Eighth Circuit found that the broad arbitration clause contained in the original 1990 agreement governed all controversies and claims arising from and relating to it, and that the 1995 letter clearly related to the original agreement. The court reversed the district court's denial of Oliver Rubber's motion to stay Fleet Tire's breach of contract suit pending arbitration.

█ Of course, *Fleet Tire* is not binding authority on this court; nor is it even persuasive authority in this instance. The Andrews' action involved tort rather than contract claims and the initial Sales Contract had no arbitration clause while the subsequent Installment Agreement contained such a clause, the opposite of the situation in *Fleet Tire*. We also find Hawks' and Morgan's reliance on an Arkansas case, *American Ins. Co. v. Cazort*, 316 Ark. 314, 871 S.W.2d 575 (1994), likewise misplaced, and the case not dispositive of the issue of whether the Andrews may be compelled to arbitrate their tort claims because of Hawks' reliance on the Federal Arbitration Act and federal case law. In *Cazort,* the plaintiff sued his brokers, for among other things, violation of the Federal Securities Act. The supreme court ruled that by alleging a violation of the Federal Securities Act of 1993, the appellee made a claim that was arbitrable and that claims alleging fraudulent inducement, intentional misrepresentation, and outrage are arbitrable under the federal act. This case clearly has no application to the kind of fraud allegations raised by the Andrews.

█ Moreover, since *Cazort*, our supreme court has reaffirmed that claims sounding in tort are not arbitrable, regardless of the language used in the arbitration agreement, despite the appellant's attempted reliance on federal case law. *Terminix Int'l. Co. v. Stabbs,* 326 Ark. 239, 930 S.W.2d 345 (1996). The case involved a suit against Terminix and others for fraud, deceit, and breach of a federal VA/HUD loan "contract" that arose from a faulty termite inspection and repair job, but there is no discussion in the opinion

concerning the application of the Federal Arbitration Act to the dispute, and it is not clear that it was an issue in the case.

■ However, there is a further reason for our affirmance of the trial court's ruling in this case. We will affirm the trial court where it reaches the right result, without regard to the reasoning employed by the trial court. *Nettleton Sch. Dist. v. Owens*, 329 Ark. 367, 948 S.W.2d 94 (1997). In *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000), the supreme court held that an arbitration clause contained in the appellant check-cashing service's agreement with its customers was invalid for want of mutuality, one of the essential elements of a contract, and affirmed the trial court's denial of its motion to compel arbitration of a suit against it for violation of Arkansas usury laws. The arbitration clause at issue provided that all disputes should be submitted to arbitration, except for Showmethemoney's actions to collect amounts due it, and further stated that Showmethemoney "cannot be sued in any court or on any controversy or dispute."

In this instance, the arbitration clause employed by Hawks and Morgan suffers from the same infirmity. It provides that "all disputes arising under case law, statutory law, and all other laws, including, but not limited to contract, tort, and property disputes will be subject to binding arbitration." Notwithstanding this language, the arbitration clause further states that Hawks retains the option to use judicial or nonjudicial relief to enforce a security agreement related to the collateral, to enforce the monetary obligation or to foreclose on the collateral, that such relief would take the form of a lawsuit, and that the Andrews would be precluded from filing a suit, including a counterclaim, in the event Hawks did file a lawsuit against them.

■ Pursuant to the supreme court's ruling in *Showmethemoney*, this arbitration clause is clearly invalid for lack of mutuality, and we cannot say that the trial court erred in refusing to grant Hawks and Morgan's motion to dismiss or stay litigation.

Affirmed.

ROBBINS and BAKER, JJ., agree.