Fannie FIELDS, Annetta Carruth, Casey Cox, Loretta Jarrett, and Willie Spriggs *v.* MARVELL SCHOOL DISTRICT

02-1336                                                    102 S.W.3d 502

Supreme Court of Arkansas
Opinion delivered April 10, 2003

*J.F. Valley, Esq., P.A.*, by: *J.F. Valley*, for appellant.

*Brazil, Adlong & Winningham, PLC*, by: *William Clay Brazil*, for appellee.

DONALD L. CORBIN, Justice. This case involves a dispute over a school board election. Appellants Fannie Fields, Annetta Carruth, Casey Cox, Loretta Jarrett, and Willie Spriggs

appeal the order of the Pulaski County Circuit Court, declaring that the positions that they had filed for as candidates on the Marvell School Board were not open for election. On appeal, they argue that the trial court erred in determining that the school district was not required to elect an entirely new school board in compliance with Ark. Code Ann. § 6-13-631 (Repl. 1999). As this is an appeal involving an issue of statutory construction, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(6). We find no error and affirm.

Appellee Marvell School District previously elected its school board via an at-large election system. Because its black voting-age population totaled 53.04% after the 1990 decennial census, the District, pursuant to section 6-13-631, changed to a zone-election system, meaning that five of the seven board members were elected from zoned districts, while the remaining two members were elected at-large. According to section 6-13-631(b)(2), each zone must have a "substantially equal population" and have boundaries based on the most recent federal decennial census information. Section 6-13-631(e) also requires that after a new school board is elected, the members must draw lots to determine the length of their terms, so that no more than two positions are open for election at the same time. This has been the election method for the school district's board members since 1994.

The 2000 decennial census showed that the district's black voting-age population was 54.87% and that zones one, two, and three had a black majority population, just as they did in the previous census. The school district hired Dr. David England, a demographer at Arkansas State University, to review its election zones and determine if the school district still remained in compliance with section 6-13-631 and the Voting Rights Act of 1965. Dr. England had drafted a report for the district in 1994 in order to bring it into initial compliance with the requirements of section 6-13-631.

According to Dr. England's 2000 report, Marvell School District remained in compliance because it maintained a plan for five single-member zones as required by section 6-13-631. Because the 2000 census information revealed a population change in zones three and four, Dr. England recommended realigning those two zones by shifting their boundary line by approximately one block. The population change was the result of construction of a housing project in zone four. After Dr.

England's study was complete, the board voted to adopt his plan, which thereby resulted in the adjustment of the boundary line separating zones three and four. Black voters, however, continued to be in the majority in three of the five single-member zones, specifically zones one, two, and three. Thereafter, on May 21, 2002, the District sent a letter to the Arkansas Department of Education, stating that it was in compliance with the requirements of the section 6-13-631.

In August 2002, Appellants filed as candidates for unexpired positions on the District's board of directors. Only one of the incumbents, running for the open at-large position, filed as a candidate. Each Appellant was certified by the Phillips County Election Commission as candidates to be placed on the September 17, 2002 ballots. Thereafter, the District filed a lawsuit seeking a temporary restraining order or preliminary injunction to prevent Appellants from appearing on the ballot, because it was the District's contention that the only seat open for election was one at-large position with an expired term.

A hearing was held in the circuit court on September 6, 2002. Testifying at this hearing was Ulicious Reed, superintendent of the school district. He testified that the school district continues to operate under a desegregation order from 1971. He stated that although the school was now fully integrated, it had to continue to monitor student placement because of a decrease in student enrollment, particularly of white students. He also testified that the election procedures instituted in 1994, pursuant to section 6-13-631, brought the district into compliance with the Voting Rights Act. Reed further testified that it was the school district's position that there was only one school board seat open for election.

Appellants took the position at this hearing that section 6-13-631 required the election of an entirely new school board after the district rezoned. The school district asserted that it was exempt from the requirements of section 6-13-631 because it met two exceptions set forth in the statute, namely that it was operating under a desegregation order and that it was in compliance with the Voting Rights Act.

After considering the testimony and arguments of counsel, the trial court ruled that the school district was in compliance

with the Voting Rights Act, as well as the court's desegregation order of 1971. The court further ruled that there was only one position on the board open for election. In a subsequent written order, dated September 11, 2002, the trial court reiterated its finding that section 6-13-631 did not require the school district to elect an entirely new school board because it was still operating under a federal desegregation order, was in compliance with the Voting Rights Act, and was in compliance with the requirements of section 6-13-631. The order directed the county clerk to count only those votes cast for the at-large position.

Appellants filed an appeal of the trial court's order with this court on the same day as the trial court's written order was filed. Appellants sought a writ of certiorari and a stay of the election scheduled for September 17. In a *per curiam* opinion, this court denied the writ and motion on the basis that this court did not have the authority to enjoin a regularly scheduled election. *See Fields v. Plegge*, 350 Ark. 57, 84 S.W.3d 446 (2002). This appeal followed.

Appellants raise only one point on appeal. They argue that the trial court erred in its interpretation of section 6-13-631. Specifically, Appellants argue that a plain reading of the statute reveals that a new school board must be elected any time a district engages in rezoning of its boundaries, as did Marvell School District in the present case. The school district counters that it is exempt from the provisions of section 6-13-631, because it is in compliance with the Voting Rights Act, as it already has a zone-elected board of directors. It claims an additional exemption based on the fact that it was operating under a 1971 federal desegregation order. We agree with the school district.

We review issues of statutory interpretation *de novo*, as it is for this court to decide what a statute means. *Clayborn v. Bankers Standard Ins. Co.*, 348 Ark. 557, 75 S.W.3d 174 (2002); *Fewell v. Pickens*, 346 Ark. 246, 57 S.W.3d 144 (2001). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Harris v. City of Little Rock*, 344 Ark. 95, 40 S.W.3d 214 (2001); *Norman v. Norman*, 342 Ark. 493, 30 S.W.3d 83 (2000).

Section 6-13-631 provides in relevant part as follows:

(a) Beginning with the 1994 annual school election, the qualified electors of a school district having a ten percent (10%) or greater minority population out of the total population, as reported by the most recent federal decennial census information, shall elect the members of the board of directors as authorized in this section, utilizing selection procedures in compliance with the federal Voting Rights Act of 1965, as amended.

The statute then sets forth a method for electing a brand new school board from five zoned districts, with two at-large positions. Once the new school board is elected, each member must draw lots to determine the length of his or her term; thus, preventing more than two seats being up for election at the same time.

The statute further provides:

(f)(1) After each federal decennial census and at least ninety (90) days before the annual school election, the local board of directors, with the approval of the controlling county board of election commissioners, shall divide each school district having a ten percent (10%) or greater minority population into single-member zones. The zones shall be based on the most recent federal decennial census information and substantially equal in population.

(2) At the annual school election following the rezoning, a new school board shall be elected in accordance with procedures set forth in this section.

In subsection (g)(1), however, school districts meeting any of the following criteria are specifically exempted from the provisions of this section:

(A) A school district that is currently operating under a federal court order enforcing school desegregation or the federal Voting Rights Act of 1965, as amended;

(B) A school district that is operating under a preconsolidation agreement that is in compliance with the federal Voting Rights Act of 1965, as amended;

(C) A school district that has a zoned board meeting the requirements of the federal Voting Rights Act of 1965, as amended; and

(D) A school district that a federal court has ruled is not in violation of the federal Voting Rights Act of 1965, as amended, so long as the court order is in effect.

Thus, there are clear exemptions that allow a school district to deviate from the requirements of section 6-13-631. The 1971 federal desegregation order was introduced at trial, and Superintendent Reed testified that the school was still operating under that order. Specifically, he stated that they constantly monitored student placement. He also testified that he sends reports to the federal court when requested and recently submitted a recruitment report. Dr. England's report stating that the school district was in compliance with the Voting Rights Act because it elected its school board members from zoned districts was also introduced at the hearing. Appellants produced no evidence to dispute the fact that these two exceptions applied in this case.

▪ Appellants now assert that it is absurd for the school district to claim that it is entitled to exemptions when it took the action of hiring someone to study the population information and undertake a rezoning as the statute requires. According to Appellants, because the school district took the action of rezoning it is now required to comply with the remainder of the statute and hold a new school board election as set forth in section 6-13-631(f)(2). Appellants, however, failed to raise this argument before the trial court. Likewise, Appellants did not argue below that the school district's act of rezoning constituted a waiver of any claimed exemption. It is well settled that this court will not consider arguments raised for the first time on appeal. *See, e.g., Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002); *Laird v. Shelnut*, 348 Ark. 632, 74 S.W.3d 206 (2002).

▪ We agree with the trial court's determination that the school district meets the exception set out in section 6-13-631(g)(1)(A), as operating under the 1971 federal desegregation order, as well as the exception set forth in subsection (g)(1)(C), having a zoned school board meeting the requirements of the Voting Rights Act. Accordingly, we cannot say that the trial court erred in determining that the only seat open for election on the September 17 ballot was the one expired at-large position.

Affirmed.