TYSON FOODS, INC., and The Pork Group, Inc. *v.*
Michael R. ARCHER, *et al.*

03–649                                                    147 S.W.3d 64

Supreme Court of Arkansas
Opinion delivered February 19, 2004

138

*Bassett Law Firm*, by: *Gary V. Weeks, Vincent O. Chadick*, and *James M. Graves*; and *Friday, Eldredge & Clark, LLP*, by: *Kevin A. Crass, R. Christopher Lawson* and *CLifford W. Plunkett*, for appellants.

*Hare, Wynn, Newell & Newton, LLP*, by: *Clark W. Mason, James J. Thompson, Jr.* and *Nolan E. Awbrey*, for appellees

DONALD L. CORBIN, Justice. Appellants Tyson Foods, Inc., and The Pork Group, Inc., which is a wholly-owned subsidiary of Tyson, appeal the order of the Pope County Circuit Court finding that an arbitration agreement in contracts they executed with Appellees, who are hog farmers, lacks mutuality of obligation and, thus, is unenforceable. This case was certified to this court as involving an issue requiring clarification or development of the law; hence, our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(b)(5). We find no error and affirm.

During a period from 1988 through 1991, Appellants actively recruited potential hog farmers. Appellees, the majority of whom are Arkansas farmers, entered into contracts, agreeing to raise live hogs for the exclusive benefit of Appellants. Pursuant to these "swine" contracts, Appellants provided swine, feed, medication, and other services to the Appellee farmers. In exchange, Appellees agreed to properly house and nourish the swine until such time that they were ready to be shipped to "finishing" plants, which were located outside the State. Appellants, however, retained title to the swine at all times.

Due to a decrease in profitability in the pork market in this area, Appellants decided to cease their operations and, thus, cancel their contracts with Appellees. Appellees were informed of this decision on or about August 18, 2002. As a result, Appellees filed suit in circuit court for fraud, deceit, and promissory estoppel on September 12, 2002. They sought both compensatory and punitive damages, alleging that they incurred substantial debt to build commercial hog farms that had now been rendered useless for any other purpose. According to their complaint, Appellees claimed that they were induced into incurring this debt by Appellants' false misrepresentations that they were "in the hog growing business to stay" and "in it for the long term."

On October 11, 2002, Appellants filed a motion to stay litigation and to compel arbitration. Therein, Appellants alleged that each Appellee operated a facility pursuant to a "swine" contract and that these contracts contained mandatory arbitration clauses. Appellants further alleged that the claims asserted by Appellees arose out of and were related to the "swine" contracts and, therefore, were subject to arbitration.

A hearing on Appellants' motion was held on January 23, 2003. No witnesses testified at this hearing, but each side presented arguments regarding whether the arbitration agreement was enforceable. The trial court issued a written order, denying Appellants' motion on February 21, 2003. As an initial matter, the trial court stated that the issue of whether the agreement was enforceable was to be decided under Arkansas contract law. In support of this finding, the trial court relied on this court's decisions in *The Money Place, LLC v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002), and *Showmethemoney Check Cashers, Inc. v. Williams*, 342 Ark. 112, 27 S.W.3d 361 (2000). The court then went on to find that the arbitration agreement was not enforceable, because it lacked mutuality of obligation, one of the elements required to establish a binding contract. From that order, comes the instant appeal.

■ Pursuant to Ark. R. App. P.—Civ. 2(a)(12), an order denying a motion to compel arbitration is an immediately appealable order. *See also E-Z Cash Advance, Inc. v. Harris*, 347 Ark. 132, 60 S.W.3d 436 (2001). This court reviews a trial court's order denying a motion to compel arbitration *de novo* on the record. *Barnes*, 349 Ark. 411, 78 S.W.3d 714.

The sole issue presented in this appeal is whether the arbitration agreement found in the "swine" contracts is a valid and enforceable arbitration agreement. Appellants argue that the trial

court erred in ruling that it was not enforceable because it lacked mutuality. According to Appellants, the arbitration agreement is mutual, as both parties are required to submit to arbitration. Appellees counter that the trial court correctly determined that there was a lack of mutuality, because in a preceding paragraph of the "swine" contracts, Appellants, in the event of Appellees' default, retain the right to "pursue any other remedies at law or equity." We agree with Appellees that there is a lack of mutual obligation in the arbitration agreement, thus, rendering it unenforceable.

■■ This court has held that arbitration is simply a matter of contract between the parties. *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361. Stated differently, the question of whether a dispute should be submitted to arbitration is a matter of contract construction. *Id*. (citing *International Union, United Auto., Aerospace, & Agri. Implement Workers of Am. v. General Elec. Co.*, 714 F.2d 830 (8th Cir. 1983)). In *Harris*, 347 Ark. 132, 60 S.W.3d 436, this court explained:

> The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally, thus we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. 5 Am. Jur. 2d § 14; and *see Prepakt Concrete Co. v. Whitehurst Bros.*, 261 Ark. 814, 552 S.W.2d 212 (1977). It is generally held that arbitration agreements will not be construed within the strict letter of the agreement but will include subjects within the spirit of the agreement. Doubts and ambiguities of coverage should be resolved in favor of arbitration. 5 Am. Jur. 2d § 14; Uniform Laws Annotated, Vol. 7, Uniform Arbitration Act, § 1, Note 53 (and cases cited therein).

*Id*. at 138, 60 S.W.3d at 440 (quoting *May Constr. Co. v. Benton Sch. Dist. No. 8*, 320 Ark. 147, 149, 895 S.W.2d 521, 523 (1995) (quoting *Wessell Bros. Foundation Drilling Co. v. Crossett Pub. Sch. Dist. No. 52*, 287 Ark. 415, 418, 701 S.W.2d 99, 101 (1985))). This court further stated in *Harris*, 347 Ark. 132, 60 S.W.3d 436, that the construction and legal effect of an agreement to arbitrate are to be determined by this court as a matter of law. *See also Hart v. McChristian*, 344 Ark. 656, 42 S.W.3d 552 (2001).

■■ Thus, we must apply our rules of contract construction to determine whether the language of the present arbitration agreement constitutes a valid contract to arbitrate. The essential

elements of a contract are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *Barnes*, 349 Ark. 411, 78 S.W.3d 714; *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361; *Foundation Telecom., Inc. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000). The only element at issue in the present case is that of mutual obligations. This court has recognized that mutuality of contract means that an obligation must rest on each party to do or permit to be done something in consideration of the act or promise of the other; thus, neither party is bound unless both are bound. *Barnes*, 349 Ark. 411, 78 S.W.3d 714; *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361. A contract, therefore, that leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other. *Id.*; *see also Townsend v. Standard Indus., Inc.*, 235 Ark. 951, 363 S.W.2d 535 (1962).

■ Before discussing the issue of mutuality as it applies to this case, we must note that our determination of whether an arbitration agreement is enforceable is a threshold issue to be determined under Arkansas law. *See Barnes*, 349 Ark. 411, 78 S.W.3d 714; *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361. Appellants' contention that this case is governed by the Federal Arbitration Act is nothing more than a red herring. The applicability of the FAA only becomes an issue if this court determines that the arbitration agreement is valid and enforceable. In other words, this court is not restricted by the confines of the FAA in determining the validity of the arbitration agreement. With that said, we now turn to the issue of whether the arbitration agreement lacks the essential contract element of mutuality of obligation.

A review of the "swine" contracts reveals that there is indeed a lack of mutuality, as Appellees agreed to forgo their rights to pursue judicial actions, while Appellants retained their ability to pursue an action through the judicial process. The contracts provided in relevant part:

> 16. <u>Arbitration.</u> Any dispute or controversy between the parties hereto arising out of or relating to this Contract, including without limitation, a dispute or controversy relating to the construction of any provision or the validity or enforceability of any term or condition (including this paragraph) or of the entire Contract, or any claim that all or any part of this Contract

(including this provision) is void or voidable, shall be submitted to arbitration in accordance with the Commercial Rules of Arbitration of the American Arbitration Association then in effect at an office of the American Arbitration Association. In any such arbitration proceeding, each party shall pay for its own costs and expenses of the arbitration, including its attorneys' fees. The decision of the arbitrators shall be final and binding upon the parties and may be enforced in any court of competent jurisdiction.

Prior to this arbitration clause, however, is a provision detailing Appellants' remedies in the event that a producer defaults on the contract. It states:

11. <u>Remedies of Company on Default of Producer.</u> Upon default of breach of any of the Producer's obligations under this Contract the Company may immediately cancel this Contract by giving notice in writing, and the Company may, without further notice, delay or legal process, take possession of swine, feed or other property owned by the Company. The Company shall have the right to utilize, the Producer's swine facilities until the swine reaches marketable weight. The Company may also pursue any other remedies at law or equity.

■■ We are unpersuaded by Appellants' argument that the trial court erroneously construed the default provision contained in paragraph eleven. Appellants argued that the provision simply reserved to them the right to pursue any remedies at law or equity, within the confines of arbitration. Appellants continue this argument on appeal and, thus, ask this court to read language into paragraph eleven that is simply not there. This court, however, will not read into a contract any such qualifying language. *See Phi Kappa Tau Housing Corp. v. Wengert*, 350 Ark. 335, 86 S.W.3d 856 (2002). Appellants further argue that the phrase "any other remedies at law or equity" was simply included so that any action they took in protecting their property would not be deemed a waiver of their other rights in the event of a default. This argument is likewise unavailing, as paragraph twelve specifically protects Appellants from any waiver of default.

■ We also disagree with Appellants' contention that the trial court erred in interpreting the contract, because it failed to harmonize paragraphs eleven and sixteen. According to Appellant, the rules of contract construction require that these paragraphs be

construed in a manner that gives effect to all of its provisions. This court has recognized that different clauses of a contract must be read together and the contract construed so that all of its parts harmonize, if that is at all possible. *Continental Cas. Co. v. Davidson*, 250 Ark. 35, 463 S.W.2d 652 (1971). A construction that neutralizes any provision of a contract should never be adopted, if the contract can be construed to give effect to all provisions. *Id.* (citing *Fowler v. Unionaid Life Ins. Co.*, 180 Ark. 140, 20 S.W.2d 611 (1929)). The problem in this case is that paragraphs eleven and sixteen simply cannot be harmonized. It is inconsistent to construe paragraph sixteen to mean that both parties are required to arbitrate any claim that may arise, when, in paragraph eleven, Appellants retain their right to pursue judicial remedies.

A similar situation occurred in *Cash In A Flash Check Advance of Ark., LLC v. Spencer*, 348 Ark. 459, 74 S.W.3d 600 (2002), a case relied upon by the trial court in concluding that the present agreement lacked mutuality. In that case, the appellee was a consumer who obtained a cash advance from the appellant, a payday lender. As part of the transaction, the appellee signed a repayment agreement that contained an arbitration provision. That provision required the parties to the agreement to submit any controversy to arbitration. In a separate paragraph titled "Consequences of Default" the appellants, however, retained the right to pursue judicial remedies upon default of the appellee. This court concluded that the agreement contained inconsistent language with respect to the "Arbitration" provision and the "Consequences of Default" provision. According to this court, this inconsistent language resulted in a lack of mutuality, as the appellees were required to submit to arbitration, while the appellants could pursue judicial remedies.

We agree with the trial court's application of *Spencer* and its predecessors in the present situation. Appellants' claim that these cases are inapplicable because they represent a special breed of cases is of no merit. While it may be true that this court's review of arbitration agreements has heretofore been focused on a particular set of cases, it does not follow that the black-letter law enunciated in those cases does not apply to other situations where we are called on to determine the enforceability of arbitration agreements.

Moreover, Appellants' argument on this point ignores the fact that the trial court also relied in part on a decision by

the Arkansas Court of Appeals in *Hawks Enters., Inc. v. Andrews*, 75 Ark. App. 372, 57 S.W.3d 778 (2001). In that case, which did not involve a payday lending scheme, the appellants contracted to sell the appellees a mobile home. The appellees signed both a sales contract and an installment contract. The installment contract contained an arbitration clause requiring the appellees to settle any "disputes, claims, or controversies arising from the contract or the relationships which result from this contract" by arbitration. *Id.* at 374, 57 S.W.3d at 779. The appellees subsequently filed suit against the appellants in circuit court for misrepresentation, negligence, and breach of contract. The appellants filed a motion to dismiss, or alternatively, to stay judicial proceedings and compel arbitration, citing the mandatory arbitration provision in the installment contract. The trial court denied the motions, and the court of appeals affirmed. Noting that it could affirm a lower court's decision for any reason, the court of appeals held that the arbitration clause lacked mutuality. The court of appeals based this decision on the fact that the appellees were forced to arbitrate their claims, while the appellants retained the right to use judicial or nonjudicial relief to enforce its rights under the contract.

Finally, Appellants argue that the trial court's ruling regarding the lack of mutuality is inconsistent with the majority of case law holding that mutuality of obligation is not required in an arbitration clause, as long as the contract is otherwise supported by adequate consideration. Appellant then cites a string of cases purporting to stand for the proposition that mutual promises are not required to enforce a contract. Appellants raise such an argument for the first time on appeal. It is well settled that this court will not consider arguments raised for the first time on appeal. *Fields v. Marvell Sch. Dist.*, 352 Ark. 483, 102 S.W.3d 502 (2003); *Arkansas Blue Cross & Blue Shield v. Hicks*, 349 Ark. 269, 78 S.W.3d 58 (2002).

Even if this issue were properly raised, we disagree with Appellants that the trial court committed any error in this regard. The trial court properly applied Arkansas contract law, which requires mutuality to enforce a contract. While Appellants are correct that no Arkansas case has required identical promises, it is clear from our cases discussing mutuality that one party cannot limit another party to the exclusive remedy of arbitration, while retaining the ability to pursue other judicial remedies for them-

selves. We have repeatedly stated that there is no mutuality where one party uses an arbitration agreement to shield itself from litigation, while at the same time reserving its own ability to pursue relief through the court system. *Harris*, 347 Ark. 132, 60 S.W.3d 436; *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361.

In sum, Arkansas precedent on mutuality requires that the terms of the agreement must fix a real liability upon both parties. *Showmethemoney*, 342 Ark. 112, 27 S.W.3d 361. No such liability exists for Appellants under the agreement at issue in the present case. Pursuant to those "swine" contracts, Appellees were limited to pursuing any grievance in the forum of arbitration. Appellants, however, retained the sole right to pursue legal or equitable remedies. Thus, the agreement lacks the necessary element of mutuality of obligations, and the trial court correctly denied Appellants' motion to stay litigation and compel arbitration.

Having determined that the arbitration agreement is not enforceable, because it lacked the required element of mutuality, it is not necessary for this court to address Appellants' argument that Appellees' claims are arbitrable tort claims under the FAA. Likewise, we need not address Appellees' argument that the arbitration agreements are unenforceable because arbitration is cost-prohibitive and because the agreements are unconscionable.

Affirmed.

GLAZE, J., concurs.

DICKEY, C.J., THORNTON and HANNAH, JJ., dissent.

TOM GLAZE, Justice, concurring. I agree that this case should be affirmed, but I would do so for different reasons. As the majority opinion notes, we must apply our rules of contract construction to determine whether the language of the arbitration agreement constitutes a valid contract to arbitrate. However, one of the rules of contract construction or interpretation is that any ambiguities will be construed strictly against the drafter of the contract. *Sturgis v. Skokos*, 335 Ark. 41, 977 S.W.2d 217 (1998). An ambiguity will be found when a provision is susceptible to more than one reasonable interpretation. *Unigard Sec. Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998); *State Farm Fire & Casualty Co. v. Midgett*, 319 Ark. 435, 438, 892 S.W.2d 469, 471 (1995).

Here, language in paragraph eleven provided that Tyson could "pursue any other remedies at law or equity." Tyson argues

that this wording means simply that it may pursue any legal or equitable remedies *in arbitration*. Tyson suggests that to employ such language — i.e., "in arbitration" — would be redundant to paragraph sixteen of the contract, which provides for arbitration between the parties. However, Tyson did not utilize any language to limit its pursuit of its remedies *only* to arbitration. Because the language is susceptible to more than one interpretation, it is necessarily ambiguous; because it is ambiguous, it must be construed strictly against Tyson, the drafter of the contract. Applying such a construction, it is readily apparent that the agreement lacks mutuality, because the appellees are bound to arbitration, while Tyson may seek redress through a court of law. Such a lack of mutuality renders the arbitration agreement unenforceable. *See The Money Place v. Barnes*, 349 Ark. 411, 78 S.W.3d 714 (2002).

JIM HANNAH, Justice, dissenting. I must respectfully dissent. The majority misunderstands the unique nature of the contract in this case. This case involves a commercial contract between Tyson and professional swine producers. The finishing contracts involved in this case only comprise one phase of swine production for Tyson. Tyson has farrowing operations, feeder operations, and finishing operations. Throughout these operations, Tyson owns the swine and must see to their welfare. At issue is only the finishing operation. The offending language from the contract cannot be understood outside the realm of the particular method of swine production involved in the case before us.

The contract places mutual obligations on both Tyson and the producer. The producer is to finish the hogs according to the stated requirements. Tyson pays for this service as well as provides the hogs, provides some materials, and transports the hogs when they reach market weight.

Mutuality is discussed in *Jones v. Abraham*, 341 Ark. 66, 74, 15 S.W.3d 310 (2000), where this court quoted the following language from *Townsend v. Standard Indus., Inc.* 235 Ark. 951, 363 S.W.2d 535 (1962):

> A contract to be enforceable must impose mutual obligations on both of the parties thereto. The contract is based upon the mutual promises made by the parties; and if the promise made by either does not by its terms fix a real liability upon one party, then such promise does not form consideration for the promise of the other party. '[M]utuality of contract means that an obligation must rest on

each party to do or permit to be done something in consideration of the act or promise of the other; that is, neither party is bound unless both are bound' [citation omitted]. A contract, therefore, which leaves it entirely optional with one of the parties as to whether or not he will perform his promise would not be binding on the other.

*Townsend*, 235 Ark. at 954–55. Mutual promises that constitute consideration for each other are the classic method of satisfying the doctrine of mutuality. *Jones, supra; J.L. McEntire & Sons, Inc. v. Hart Cotton Co.*, 256 Ark. 937, 511 S.W.2d 179 (1974). There is mutuality of obligation in this case.

The majority appears to conclude similar to the payday scheme cases, that under the contract, Tyson gets to go to court when it wants but the producer does not. This is not correct. Any dispute arising from an obligation under the contract must be arbitrated. Paragraph 11 could be more carefully drafted; however, the language in paragraph 11 is understandable. Paragraph 11 provides for protection of Tyson's property, an obligation separate and apart from the duties of the producer.

Paragraph 11 contains just the sort of language one would expect to find in a contract for commercial production of animals belonging to another. Paragraph 11 does not speak to the contract as a whole, or to the issues in this case, such as cancellation of the contract. The hog production contract in this case is an agreement between the owner of living animals and a producer who contracts to bring the animals to a finished state for processing. In hog production of the type involved here, a professional producer undertakes the care and feeding of swine belonging to Tyson. The investment Tyson has in the hogs is substantial even before the hogs are delivered to the producers, who in this case are under a duty to bring the hogs to a finished weight and condition for processing. Therefore, Tyson is not only worried about whether the producer will carry out his or her duties as agreed under the contract, which might well give rise to a disagreement submitted to arbitration, but Tyson is also rightly concerned about its investment in the hogs while claims subject to arbitration are resolved. Paragraph 11 provides:

Remedies on Default of Producer: Upon default of breach of any of the Producer's obligations under this Contract the Company may immediately cancel this contract by giving notice in writing, and the Company may, without further notice, delay or legal

process, take possession of swine, feed or other property owned by the Company. The Company shall have the right to utilize the Producer's swine facilities until the swine reaches marketable weight. The Company may also pursue any other remedies at law or equity.

Paragraph 11 provides protection for Tyson's property. It allows Tyson to step in to protect its property when the animals are in peril. The offending language is the reference to "other remedies at law or equity." This language does not reach to disputes such as propriety of a cancellation, or any award of damages for breach of contract. This language is intended to allow Tyson to protect its property by injunction or such other court action as may be necessary, and which would be outside the realm of an arbitrator's power. The swine belonged to Tyson before they were delivered. They belonged to Tyson during production, and they continued to belong to Tyson even after notice of cancellation was given. The complained of language does not violate the requirement of mutuality of obligation.

For the foregoing reasons, I respectfully dissent.

DICKEY, C.J., and THORNTON, J., join this dissent.