# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2021

———————

Clyde Wiser; Wanda Wiser,

    Appellees,

v.

Wayne Farms, a division of
Continental Grain Co.,

    Appellant.

\* \* \* \* \* \* \* \* \* \* \*

Appeal from the United States
District Court for the
Eastern District of Arkansas.

———————

Submitted: January 14, 2005
Filed: June 17, 2005

———————

Before MELLOY, SMITH, and COLLOTON, Circuit Judges.

———————

COLLOTON, Circuit Judge.

Wayne Farms appeals from the district court's[1] denial of its motion to compel arbitration, arguing that the court erroneously applied Arkansas law rather than Georgia law. Wayne Farms filed its motion in response to Clyde and Wanda Wiser's complaint alleging fraud, fraudulent inducement, and promissory estoppel. The district court found that the arbitration clauses in two agreements between Wanda

———————

[1]The Honorable Stephen M. Reasoner, United States District Judge for the Eastern District of Arkansas.

Wiser and Wayne Farms were unenforceable under Arkansas law due to lack of mutuality of obligation. We affirm.

## I.

In 1997, Wayne Farms and Wanda Wiser signed two Breeder Flock Agreements (the "Agreements") contemplating a five-year relationship in which Wanda would care for chickens supplied by Wayne Farms and harvest the chickens' eggs in exchange for compensation. This arrangement remained essentially unchanged until 1999, when the Wisers attempted to sell their farm. Instead of a buyer, the Wisers located a potential lessee who was interested in operating the Wisers' farm with an option to purchase it. The potential lessee wanted to retain the contracts with Wayne Farms, and offered to pay the Wisers a percentage of the income received therefrom.

The Wisers allege that upon hearing of the lessee's interest, they contacted Wayne Farms regarding the potential lease. Wayne Farms, according to the Wisers, agreed to permit the lessee to operate under the Agreements so long as certain improvements were made to the Wisers' facilities. The Wisers needed to borrow money in order to make the improvements, so, according to the Wisers' complaint, Clyde Wiser sought assurances from Wayne Farms that if the lessee did not perform acceptably under the Agreements, Wayne Farms would permit Wanda Wiser to resume raising its poultry. Wayne Farms, the Wisers allege, "promised both Wanda and Clyde Wiser that in the event Wayne Farms decided to terminate its relationship with the [lessee], Wanda Wiser would be allowed to again raise breeder hens for Wayne Farms." (Compl. ¶ 7).

The Wisers borrowed about $54,000 to make the required improvements and proceeded to lease their farm in 2000. The lessee did not perform to Wayne Farms's satisfaction, and, as a result, Wayne Farms removed its hens from the Wisers' farm

in 2002. The Wisers repeatedly requested that they be permitted again to raise breeder hens for Wayne Farms, but they were denied each time.

The Wisers brought suit against Wayne Farms on March 7, 2003, seeking damages in excess of $500,000 for alleged fraud, fraudulent inducement, and promissory estoppel. Wayne Farms answered on April 21, 2003, and, on the same day, moved the court to compel arbitration pursuant to the arbitration clauses contained in the Agreements. The district court issued its order denying Wayne Farms's motion on March 25, 2004, holding that the Wisers were not bound by the arbitration clauses in the Agreements. The court's order contained no express consideration of choice of law, but relied on the Arkansas Supreme Court opinion in *Tyson Foods, Inc. v. Archer*, 147 S.W.3d 681 (Ark. 2004). *Archer* was decided subsequent to the parties' filings in this case, and held that "Arkansas precedent on mutuality requires that the terms of the agreement must fix a real liability upon both parties," *id.* at 687, and that a contract clause permitting one party to "pursue any other remedies at law or equity," *id.* at 685, while requiring the other party to submit any controversies to arbitration, lacked mutuality. *Id.* at 687. The district court found the Agreements to be similar in relevant part to the contract at issue in *Archer*, and therefore held that the arbitration clauses contained in the Agreements were unenforceable for lack of mutuality.

II.

The parties do not dispute that if Arkansas law applies to the Agreements, then their requirement to arbitrate is unenforceable. Wayne Farms asserts that the district court erred in applying Arkansas law because the Agreements clearly state that Georgia law is to govern any disputes arising between the parties. The Agreements each contain a paragraph entitled "Governing Law" providing that the Agreements are to "be governed by, and interpreted and construed in accordance with, the laws of the State of Georgia." They also contain arbitration clauses stipulating to the

application of Georgia law in the event of arbitration. The Wisers contend, however, that any error committed by the district court in applying Arkansas law is of Wayne Farms's own making, and that Wayne Farms "waived" the argument that Georgia law should apply by its conduct in the district court.

The Wisers are certainly correct that "[o]rdinarily this court will not consider arguments raised for the first time on appeal." *Wever v. Lincoln County, Nebraska*, 388 F.3d 601, 608 (8th Cir. 2004). In the choice of law context, in particular, we repeatedly have refused to consider arguments not presented to the district court. *E.g., Colonial Ins. Co. of Cal. v. Spirco Envtl., Inc.*, 137 F.3d 560, 561 (8th Cir. 1998); *Davidson & Schaaff, Inc. v. Liberty Nat'l Fire Ins. Co.*, 69 F.3d 868, 869 (8th Cir. 1995); *Kostelec v. State Farm Fire & Cas. Co*, 64 F.3d 1220, 1224 (8th Cir. 1995); *Pellerin Laundry Mach. Sales Co. v. Reed*, 300 F.2d 305, 309-10 (8th Cir. 1962).

This case fits that category. Wayne Farms failed to argue for the application of Georgia law in the district court. The references to Georgia law contained in the Agreements were never urged upon the district court, and citations to Georgia cases or statutes are wholly absent from Wayne Farms's pleadings, motions, and supporting documents. Wayne Farms, in fact, affirmatively relied on Arkansas law to argue almost every legal issue. In its Brief in Support of Motion to Compel Arbitration and to Stay, Wayne Farms cited Arkansas cases regarding the interpretation of the Federal Arbitration Act, 9 U.S.C. §§ 1-14, and the enforceability of arbitration clauses. With respect to the crucial issue on appeal, Arkansas' requirement of mutuality of obligation, Wayne Farms cited only opinions of the Arkansas Supreme Court. "The rule that we will not address arguments raised for the first time on appeal applies even more forcefully when the appellant took the opposite position in the district court," *Davidson & Schaaff*, 69 F.3d at 869 (internal citations omitted), and this is such a case.

Wayne Farms attempts to explain its failure to argue for the application of Georgia law by noting that there was no difference between the mutuality requirements of Georgia and Arkansas until the Arkansas Supreme Court decided *Archer* in 2004. As Wayne Farms conceded at oral argument, however, after *Archer* was decided on February 19, 2004, there was more than a month delay before the district court issued its order, during which time Wayne Farms again failed to direct the district court's attention to a choice of law issue. Responsibility for the district court's application of Arkansas law thus lies squarely with Wayne Farms.

Wayne Farms argues that despite its repeated citation of Arkansas law and failure to direct the district court's attention to Georgia law, the court's application of Arkansas law should be reviewed for plain error. According to Wayne Farms, the district court's application of Arkansas law is "an obvious instance of misapplied law." (Appellant's Reply Br. at 7). "[I]t is well settled," according to Wayne Farms, that a court of appeals may consider an issue for the first time on appeal "in order to prevent plain error or a miscarriage of justice." (*Id.*) This contention draws some support from *Singleton v. Wulff*, 428 U.S. 106 (1976), where the Supreme Court allowed that a court of appeals would be "justified" in resolving a new issue on appeal where "the proper resolution is beyond any doubt" or where "injustice might otherwise result." *Id.* at 121.

More recently, however, the Court has established a stringent test for the correction of unpreserved errors in the criminal context, requiring an obvious error that would affect a defendant's substantial rights and "seriously affect the fairness, integrity, or public reputation of judicial proceedings" before a court of appeals may take corrective action. *United States v. Olano*, 507 U.S. 725, 736-37 (1993). We have suggested that *Olano* also applies in the civil context, *see Rush v. Smith*, 56 F.3d 918, 923 & n.3 (8th Cir. 1995), and other circuits have concluded that "the principles and decision enunciated in *Olano* apply *a fortiori* in the civil context where courts pay less strict attention to procedural protocol." *Smith v. Gulf Oil Co.*, 995 F.2d 638,

646 (6th Cir. 1993); *Highlands Ins. v. Nat'l Union Fire Ins.*, 27 F.3d 1027, 1032 (5th Cir. 1994) (quoting *Smith*); *see also Owens-Ill., Inc. v. Rapid Am. Corp.* (*In re Celotex Corp.*), 124 F.3d 619, 631 (4th Cir. 1997) ("Because we cannot conceive of a reason why an appellant in a civil case should bear a lesser burden for obtaining correction of a forfeited error than an appellant in a criminal case, we hold that, at a minimum, the requirements of *Olano* must be satisfied before we may exercise our discretion to correct an error not raised below in a civil case."); *Fashauer v. N. J. Transit Rail Operations, Inc.*, 57 F.3d 1269, 1289 (3d Cir. 1995) ("If anything, the plain error power in the civil context – which is judicially rather than statutorily created – should be used even more sparingly.").

The law in our circuit on the plain-error test in a civil context, however, is not entirely clear. Although *Rush* has been interpreted as "appl[ying] the *Olano* test in the civil context without expressly saying so," *Owens-Ill., Inc.*, 124 F.3d at 631; *see also United States v. Pirani*, 406 F.3d 543, 563-64 (8th Cir. 2005) (Bye, J., concurring in part and dissenting in part), since *Rush*, on occasion, we have corrected errors raised for the first time on appeal in civil cases, observing among other things that we may do so when proper resolution of the issue is "beyond any doubt." *E.g.*, *Williams v. Chai-Hsu Lu*, 335 F.3d 807, 809 (8th Cir. 2003); *Tarsney v. O'Keefe*, 225 F.3d 929, 939 (8th Cir. 2000); *United States Dep't of Labor v. Rapid Robert's Inc.*, 130 F.3d 345, 348 (8th Cir. 1997) (quoting *Singleton*, 428 U.S. at 121); *Miller v. FEMA*, 57 F.3d 687, 689 (8th Cir. 1995). Wayne Farms urges us to follow this latter line of analysis.

Even assuming Wayne Farms did not waive, *i.e.*, intentionally relinquish, any argument about choice of law by its citation in the district court of Arkansas (rather than Georgia) precedents, we think the better view among our apparently conflicting precedents is that an unpreserved error in the civil context must meet at least the *Olano* standard to warrant correction. The alleged error in this case is that the district court failed to apply a contract provision that Wayne Farms never invoked, with the

consequence that this dispute will be litigated in federal court. To hold Wayne Farms to the application of Arkansas law under these circumstances surely would not "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Olano*, 507 U.S. at 736.

But even if there remains discretion to resolve newly-raised issues based simply on the presence of an obvious error, it is clear that "[t]he matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases." *Singleton*, 428 U.S. 121. We are unaware of any case in which this court has applied the "beyond any doubt" exception described in *Singleton* to decide a choice-of-law question not raised below, and several opinions of this court cited above steadfastly decline to consider such an issue. Even assuming, *arguendo*, that the Agreements call for the application of Georgia law, the only effect of a mistaken use of Arkansas law is that this dispute will be litigated in federal court rather than in an arbitral forum. As Wayne Farms concedes, the requirement to proceed in federal court can hardly be considered a miscarriage of justice. We see no good reason to exercise our discretion to reach Wayne Farms's belated choice-of-law argument, even assuming we have such authority.

The judgment of the district court is affirmed.

_____