RICHARD HARP HOMES, INC. *v.* Jim VAN WYK and Marla Van Wyk

CA 06-1446                                      262 S.W.3d 189

Court of Appeals of Arkansas

Opinion delivered September 12, 2007

*Niswanger Law Firm, PLC,* by: *Stephen Niswanger,* for appellant.

*Albert Janney Thomas, III,* for appellee.

KAREN R. BAKER, Judge. This is an appeal from an order denying a motion by appellant Richard Harp Homes, Inc. (Harp), seeking to compel arbitration of a cross-claim filed against it by appellees Marla and Jim Van Wyk. The circuit court found that the arbitration provision was supported by mutuality of obligation but that the obligations were rendered illusory when the contract was considered as a whole. We affirm.

In April 2004, Harp agreed to construct a home for the Van Wyks in a subdivision covered by a "Bill of Assurance" containing a provision regulating setback lines between adjacent lots. The agreement contained the following provisions:

10. DISPUTES OR CLAIMS:

A. It is mutually agreed that all disputes and controversies between the parties arising out of or in connection with this Contract as to the existence, construction, validity, interpretation or meaning, performances, nonperformance, enforcement, operation, breach, continuance, or termination thereof or any claim, whatsoever, including, without limitation, alleged misrepresentation, unjust enrichment, fraud, negligence and violations of the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*), Arkansas Unfair Practices Act (Ark. Code Ann. § 4-75-201, *et seq.*) or any other consumer protection statute shall be submitted to non-binding mediation in accordance with the rules and procedures of the American Arbitration Association and by using the following procedure. Any warranty claims shall first be submitted to any dispute resolution procedure as set forth in the warranty program called for herein. Thereafter, either party may demand mediation by setting forth such claims in such detail as shall give the other party notice and by submitting the claim to mediation in accordance with the rules and procedures of the American Arbitration Association; provided, the parties may mutually agree at the time of a dispute to use a mediation service other than the American Arbitration Association.

1. Within thirty (30) days after the demand, the other party shall prepare a response to the allegations set forth in the Statement setting forth such other matters the other party considers pertinent.

2. Each party shall bear her or his or its own mediation costs and expenses and shall equally bear the cost of the mediation.

B. If the parties are unable to settle or resolve the dispute or controversy by mediation, the claim shall be submitted to binding arbitration before one (1) arbiter in accordance with the rules and procedures of the American Arbitration Association in which event the decision of the arbitrator shall be final and binding upon both Parties and may be entered in any Court having jurisdiction; provided, the parties may mutually agree at the time of a dispute to use an arbitration service other than the American Arbitration Association. Demand for arbitration shall be made in writing with the other party to the claim and with the arbitrator. A demand for arbitration shall be made within a reasonable time after the claim, dispute or other matter in question has arisen, but in no event later than the date for the institution of legal proceedings based upon the law of the state where the property is located. The cost of the arbitrator shall be paid by the non-prevailing party or as determined by the arbitrator. The parties acknowledge and agree that the subject matter of this Contract and the undertakings of the parties are matters involving interstate commerce, and as such this arbitration clause is governed by and enforceable pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*

C. The parties stipulate that the provisions of this Contract shall be a complete defense to any suit, action, or proceeding instituted in any federal, state, or local court or before any administrative tribunal with respect to any controversy or dispute arising during the period of this Contract. The mediation and arbitration provisions shall, with respect to the controversy or dispute, survive the termination or expiration of this Contract.

D. Said Warranty provides for final and binding arbitration regarding any controversy, claim or complaint arising under said Warranty, which is not resolved by mutual agreement between PURCHASER and BUILDER. PURCHASER'S sole rem-

edy for any such unresolved Warranty matter is the final and binding arbitration stated herein, the right to sue the BUILDER in court being expressly waived.

. . . .

31. BREACH BY PURCHASER:

If this Contract is breached by PURCHASER or if the PUR-CHASER fails for any reason to complete his purchase of Property in accordance with the terms and conditions set forth herein, BUILDER shall have the following non-exclusive remedies: BUILDER shall be excused from further performance and may sell the property to a third party without in any way limiting BUILDER'S remedies set forth below; or BUILDER may declare this Contract terminated and Earnest Money plus non-refundable funds shall be forfeited and in addition five thousand dollars ($5,000) shall be paid by PURCHASER to BUILDER as liquidated damages. Earnest Money, non-refundable funds or other damages paid to BUILDER, shall not in any way prejudice the rights of BUILDER or Broker in any action for damages or specific performance, or both. PUR-CHASER shall be obligated to pay all costs or losses which BUILDER may sustain, including lost profit, court costs and expenses of litigation, including attorneys' fees. PUR-CHASER shall also be obligated to pay any sales commissions that are due.

32. BREACH BY BUILDER:

If this Contract is breached by BUILDER or if BUILDER fails for any reason to complete the sale, PURCHASER may terminate this Contract by written notice to BUILDER and receive a refund of the Earnest Money as PURCHASER'S sole remedy. PURCHASER hereby waives the right to damages or specific performance, or both from BUILDER. PUR-CHASER hereby waives the defense of non-mutuality of remedies.

During construction, Harp discovered that one corner of the structure may have been in violation of the setback provision of the bill of assurances. Harp asserts that, when it brought the matter to the attention of the Van Wyks, it was instructed to complete the

residence. In April 2005, Harp submitted a proposal to ensure that the residence would comply with the bill of assurances. After the proposal was approved by the Van Wyks and the architectural committee, the Van Wyks refused to allow the modifications to be made. John Crow and his wife, Lee Ann McMillan-Crow, live next door to the Van Wyks on the side where the Van Wyk home allegedly encroaches on the setback line. On March 16, 2006, the Crows filed suit against Harp and the Van Wyks seeking to enforce the setback requirements of the bill of assurances. Harp answered, stating that "the Van Wyks' structure appears to sit within the setback area" but otherwise denying the material allegations of the complaint. The Van Wyks denied the material allegations of the complaint. They subsequently amended their answer to assert a cross-claim against Harp.

The cross-claim stated causes of action for failure to return a security deposit for rental property, breach of contract, breach of implied warranty, negligence, fraud, slander, and deceptive trade practices[1]. The cross-claim also sought punitive damages. Harp responded by filing a motion to compel arbitration.[2] The Van Wyks opposed the motion, asserting that the arbitration provision lacked mutuality and that some of their claims were not subject to arbitration.

At the hearing on the motion, Harp argued that the agreement required arbitration of all claims between the parties. The Van Wyks admitted that they amended their complaint to eliminate the claims that would be subject to arbitration, i.e., the breach-of-contract and deceptive-trade-practices claims. They also asserted that the remaining tort and fraud claims had no connection with the agreement containing the arbitration provision.

The trial court ruled from the bench and found that, although the arbitration clause contained mutuality of obligation, that mutuality was rendered illusory when the contract was read as a whole, considering the remedies provided each party in paragraphs 31 and 32. A written order was entered on August 17, 2006.

---

[1] The cross-claim was later amended to omit the causes of action for breach of implied warranty and violation of the Deceptive Trade Practices Act.

[2] Harp also answered the cross-claim, denying the material allegations. Harp asserted that the Van Wyks were the first party to breach the agreement.

Harp filed its notice of appeal on September 18, 2006.[3] The Crows subsequently dismissed Harp from the original suit.

An order denying a motion to compel arbitration is an immediately appealable order. Ark. R. App. P.–Civ. 2(a)(12); *IGF Ins. Co. v. Hat Creek P'ship*, 349 Ark. 133, 76 S.W.3d 859 (2002). We review a circuit court's order denying a motion to compel arbitration de novo on the record. *IGF Ins., supra.*

Harp argues that the mutuality of the arbitration provision is not rendered illusory because it has not reserved the right to pursue its remedies through any means other than arbitration.

We find this case to be controlled by the supreme court's decision in *Tyson Foods, Inc. v. Archer*, 356 Ark. 136, 157 S.W.3d 681 (2004), because the agreement in the present case, when read as a whole, does not clearly and specifically limit Harp to its remedies in arbitration. In *Tyson Foods*, the court held that an arbitration agreement lacked the necessary mutuality of obligation where swine producers were limited to pursuing any grievance in an arbitration forum while the owner of the swine (Tyson) retained the sole right to pursue legal or equitable remedies. *Tyson*, 356 Ark. at 146, 147 S.W.3d at 687. The court also noted that there is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while at the same time reserving its own ability to pursue relief through the court system. *Id.*

The same rules of construction and interpretation apply to arbitration agreements as apply to agreements generally, thus we will seek to give effect to the intent of the parties as evidenced by the arbitration agreement itself. *Id.* In the present case, paragraph 10 purports to require that both parties submit "all disputes" to mediation and arbitration. Paragraphs 31 and 32 then specify the remedies available to each party in the case of a breach. Included in paragraph 31, entitled "Breach by Purchaser," is the following language: "[Van Wyk] shall be obligated to pay all costs or losses which [Harp] may sustain, *including* lost profit, *court costs and expenses of litigation,* including attorneys' fees." (Emphasis added.)

---

[3] The order was entered on August 17, 2006, and the notice of appeal was filed on September 18, 2006. The thirtieth day on which to file the notice of appeal fell on Saturday, September 16, 2006. Therefore, the time for filing the notice of appeal was extended to the following business day, Monday, September 18. Ark. R. App. P.–Civil 9; *Watanabe v. Webb*, 320 Ark. 375, 896 S.W.2d 597 (1995).

While this language does not specifically reserve Harp's right to litigate any or all disputes, it does render the agreement ambiguous so that the trial court can construe the agreement. The ambiguity arises because the italicized section could be seen as merely illustrative of the types of costs or losses for which the Van Wyks would be responsible. On the other hand, the language could indicate an intent that Harp retained the right to bring suit in court for a breach.[4]

In *Tyson Foods*, the supreme court declined to read into the contract qualifying language that would have made it clear that Tyson's remedies were limited to the confines of arbitration. *Tyson*, 356 Ark. at 143, 147 S.W.3d at 685. In the present case, it would be necessary to change the wording of paragraph 31 in order for the court to find an unambiguous mutuality of obligation. However, that would be contrary to the rules of construction that require that effect be given to all provisions of the agreement. *Id.* at 143-44, 147 S.W.3d at 685. Therefore, the circuit court correctly declined to compel the parties to submit to arbitration, and we affirm.

Affirmed.

ROBBINS and GLOVER, JJ., agree.

---

[4] *Cf. Hamilton v. Ford Motor Credit, Inc.*, 99 Ark. App. 124, 257 S.W.3d 566 (2007) (finding the arbitration agreement to be unambiguous where it allowed both parties to demand arbitration while, at the same time, allowing both parties to maintain certain rights, such as the right of Ford Motor Credit to protect its security interest in the vehicle).