240 N.J. Super. 242 (1989)
573 A.2d 171
SIEGLINDE LEHMANN, PLAINTIFF-RESPONDENT,
v.
JOHN J. O'BRIEN, AN INDIVIDUAL, DEFENDANT, AND LEISURE TIME TOURS, DEFENDANT-RESPONDENT, AND NEW JERSEY PROPERTY-LIABILITY INSURANCE GUARANTY ASSOCIATION, INTERVENOR-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 24, 1989.
Decided November 28, 1989.
*243 Before Judges PRESSLER, LONG and GRUCCIO.
Stryker, Tams and Dill, attorneys for appellant (Richard R. Spencer, Jr., of counsel; Darryl W. Simpkins, on the brief).
*244 Steven Morey Greenberg, attorney for respondent (Bonnie Blume Goldsamt, on the brief).
The opinion of the court was delivered by LONG, J.A.D.
On April 25, 1980, plaintiff Seiglinde Lehmann was injured when a van driven by defendant John J. O'Brien struck her car. At the time, O'Brien was employed by defendant Leisure Time Tours (Leisure Time), which owned the van O'Brien was operating in the course of his employment. Lehmann sued defendants Leisure Time and O'Brien seeking recovery for her injuries. At the time the suit was instituted, Leisure Time was insured by Transit Casualty which defended the action. In March 1984, the case went to trial. The jury returned a verdict of $10,000 in favor of plaintiff and the trial judge ruled that she was entitled to prejudgment interest on the award.
Plaintiff's motions for additur or a new trial were denied and she appealed. In April 1986, this court affirmed. During the pendency of the appeal, Leisure Time's insurer, Transit, became insolvent and its obligations (including this one) were assumed by the New Jersey Property-Liability Insurance Guaranty Association (Association).
In April 1986, plaintiff's counsel sent a warrant to the Association's counsel (the Association continued to retain defendants' trial counsel) to satisfy the judgment for $10,000 plus interest. The Association's counsel returned the warrant unsatisfied, stating that the Association would not pay interest awards on such judgments. On May 23, 1986, plaintiff's counsel again sent the Association's counsel a warrant for satisfaction of the judgment plus interest. This time, the Association's counsel accepted the warrant and filed it with the trial judge. However, the warrant filed mistakenly provided only for the Association's payment of the $10,000 judgment amount and not for any prejudgment or post-judgment interest. To remedy this mistake, plaintiff filed a notice of motion in mid-June 1986 to *245 vacate the warrant, which was formally set aside by way of an order entered on July 7, 1986.
In September 1986, plaintiff proceeded by way of writ of execution against Leisure Time's property. In 1987, when plaintiff sought to levy against one of Leisure Times's buses, Leisure Time filed a motion for stay of the writ of execution. The trial judge stayed enforcement of the writ pending a hearing on the issues of pre- and post-judgment interest. Leisure Time argued that the Association was precluded by statute from paying pre- or post-judgment interest and plaintiff was statutorily barred from pursuing Leisure Time and O'Brien for that interest. In response, plaintiff's counsel contended that the pertinent statute did not prevent the Association from paying interest on plaintiff's judgment.
The trial judge determined that the Association was required to pay plaintiff both pre- and post-judgment interest and that plaintiff was barred from pursing claims directly against Leisure Time and O'Brien. The Association, on behalf of defendants, appealed from that portion of the trial judge's written order which required it to pay the interest.
In November 1987, another Superior Court judge issued an unreported opinion regarding the Association in an unrelated case which concluded that the Association was not statutorily required to pay prejudgment interest and that, instead, the plaintiffs could pursue the defendants to collect the prejudgment interest due. In light of the conflict between defendants and the Association which was perceived to exist as a result of this decision, the Association's counsel was permitted to withdraw, and new counsel was substituted for defendant Leisure Time. Leisure Time's new counsel then advised this court that it did not intend to appeal the trial judge's interest determination. As a result, the Association's position was unrepresented on appeal and the Association was granted the right of intervention. As a result, Leisure Time and the Association are *246 pitted against each other on this appeal which is solely focused on the question of pre- and post-judgment interest.
We turn first to the question of prejudgment interest. The New Jersey Property-Liability Insurance Guaranty Association Act (N.J.S.A. 17:30A-1 et seq.), which sets forth the rights and duties of the Association, was adopted in 1974 to protect policyholders of insurance companies which became insolvent. Railroad Roofing & Bldg. Supply Co., Inc. v. Financial Fire & Cas. Co., 85 N.J. 384, 389, 427 A.2d 66 (1981). The protection provided by the act extends to non-policyholder claimants such as the plaintiff in this case. Sussman v. Ostroff, 232 N.J. Super. 306, 310-311, 556 A.2d 1301 (App.Div. 1989).
The purpose of the act is "... to provide a mechanism for the payment of covered claims...." N.J.S.A. 17:30A-2a. The "mechanism" provided by the act is the Association: a private, nonprofit, unincorporated legal entity comprised of all insurers licensed in New Jersey to offer property and liability insurance within the coverage of the act. N.J.S.A. 17:30A-6; Sussman, 232 N.J. Super. at 311, 556 A.2d 1301. Under the act, the Association is required to assume the contractual obligations of an insolvent insurer and to pay certain claims of the insurer's policyholders up to the limit of a policyholder's contract, but subject to a maximum liability of $300,000. N.J.S.A. 17:30A-8; Sussman, 232 N.J. Super. at 311, 556 A.2d 1301.
The Association's responsibility to pay claims under an insolvent insurer's policy is limited to the payment of "covered claims." N.J.S.A. 17:30A-5d; N.J.S.A. 17:30A-8a. In defining a "covered claim", the act provides that this claim "shall not include amounts for interest on unliquidated claims. ..." N.J.S.A. 17:30A-5d (emphasis added). Thus, the Association is precluded by statute from paying interest on "unliquidated claims." (The term "unliquidated claims" is not further defined in the act.)
*247 Leisure Time argues that plaintiff's claim was "liquidated" on March 27, 1984, the date she received a judgment. The amount of her damages ($10,000) was thus certain when the Association assumed Transit's obligations in December 1985. Therefore, Leisure Time contends that plaintiff's claim was "liquidated," and the disputed language of the act presents no barrier to the award of prejudgment interest.
In contrast, the Association urges that the act bars it from paying any prejudgment interest on the claims that it assumes. This is so, the Association maintains, because a claim is plainly "unliquidated" before it is reduced to judgment and such "unliquidated" claims are subject to the statutory bar on the payment of interest.
Our recent decision in Hendricks v. A.J. Ross Company, et al., 232 N.J. Super. 243, 556 A.2d 1267 (App.Div. 1989) lays this controversy to rest. In Hendricks, the plaintiff obtained a money judgment against an insured defendant which included $13,000 in prejudgment interest. Because the defendants' insurer had become insolvent, the defendants' insurance claim was referred to the Association. The Association refused to pay the $13,000 in prejudgment interest on the plaintiff's judgment. Litigation ensued and eventually the trial judge held that prejudgment interest on a tort claim was statutorily barred interest on an "unliquidated" claim.
Plaintiff appealed and we affirmed stating:
[t]he usual understanding is that a tort claim, at least one seeking damages for pain and suffering, is unliquidated. See Busik v. Levine, 63 N.J. 351, 356-357 [307 A.2d 571] (1973), app. dism. 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973). Indeed, in authorizing the award of prejudgment interest on tort claims through the adoption of R. 4:42-11(b), the Supreme Court recognized that the award of prejudgment interest had been limited theretofore to liquidated claims and that tort claims were unliquidated. Id. at 358-359 [307 A.2d 571.]. Therefore, when the Legislature enacted the New Jersey Property-Liability Insurance Guaranty Act in 1974, N.J.S.A. 17:30A-1 et seq., and excluded "interest on unliquidated claims" from "covered claims" [in 1979, pursuant to an amendment to N.J.S.A. 17:30A-5d], it undoubtedly had in mind prejudgment interest on tort claims which the Supreme Court had authorized in 1971 through the adoption of R. 4:42-11(b). Consequently, we agree with the trial court's conclusion that *248 plaintiff's claim remained unliquidated until the jury returned a verdict and that any prejudgment interest accruing while the claim was unliquidated would constitute "interest on an unliquidated claim." [Hendricks, 232 N.J. Super. at 246-247, 556 A.2d 1267.]
In short, the fact that plaintiff's claim was reduced to judgment in March 1984 did not change its status as unliquidated for prejudgment interest purposes. Under the statute as interpreted in Hendricks, the Association is precluded from paying prejudgment interest on such an unliquidated claim. Therefore the award of prejudgment interest to plaintiff here was improper and the decision by the trial judge should be reversed.
Hendricks also addresses the Association's alternative suggestion that Leisure Time should pay the prejudgment interest due plaintiff. There, we stated:
[w]e also agree with the trial court's further conclusion that a party insured by an insolvent carrier is not responsible for the payment of prejudgment interest when the Association is exempt from that responsibility. N.J.S.A. 17:30A-5(d) states in pertinent part:
"Covered claim" shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise; provided, that a claim for any such amount, asserted against a person insured under a policy issued by an insurer which has become an insolvent insurer, which, if it were not a claim by or for the benefit of a reinsurer, insurer, insurance pool, or underwriting association, would be a "covered claim," may be filed directly with the receiver of the insolvent insurer, but in no event may any such claim be asserted in any legal action against the insured of such insolvent insurer. (Emphasis added).
The underscored clause in N.J.S.A. 17:30A-5(d) appears prior to the exclusion from "covered claims" of "interest on unliquidated claims." Nevertheless, we believe that this clause reflects a general legislative policy to avoid imposition of liability upon an insured for claims which may not be pursued against the Association. Moreover, even if N.J.S.A. 17:30A-5(d) did not mandate that an individual insured not be held responsible for prejudgment interest due to its insurer's insolvency, it would be appropriate under the circumstances for the court to exercise its power under R. 4:42-11(b) to suspend the running of prejudgment interest. See Busik v. Levine, 63 N.J. at 384 [307 A.2d 571] (Conford, J., dissenting). [Hendricks, 232 N.J. Super. at 247-248, 556 A.2d 1267.]
While this is a closer question than the basic issue of the Association's liability, we think that the Hendricks interpretation of the statute is reasonable and reject the claim that Leisure Time is responsible for payment of prejudgment interest *249 to plaintiff. But see Wilton v. Cycle Trucking, Inc., 240 N.J. Super. 326, 573 A.2d 462 (1989).
We turn finally to the issue of post-judgment interest. Under the rules of court, the usual practice is to allow post-judgment interest "[e]xcept as otherwise ordered by the court or provided by law ..." R. 4:42-11(a). Thus, unless there is a legal impediment to the payment of such interest, its grant or denial is discretionary with the trial judge.
Here, the only statutory bar to the payment of interest is with respect to unliquidated claims. Plaintiff's claim became "liquidated" on March 27, 1984. Post-judgment interest was thus theoretically payable by the Association from that date.
The Association acknowledges its responsibility for the interest which accrued after it began to participate in the case but argues that it would be inequitable to require it to pay the interest which accrued after the entry of the judgment but prior to its assumption of Transit's obligations. The gist of this argument is that such a payment of interest, for a period over which it had no control, would unwarrantedly limit its ability to pay the claims of "other deserving claimants." In deciding as she did, the trial judge explicitly stated that there was "no equitable or exceptional reason" that barred the Association's payment of post-judgment interest. Here, plaintiff was injured in 1980. Unlike a litigant in an ordinary tort case, she will receive no interest up to the date of the judgment, March 27, 1984. She has waited more than nine years for her recovery. Under the circumstances, and in the absence of any evidence to suggest that other "covered" claimants of the Association are at risk, the judge's decision to allow post-judgment interest for the contested period was well within her discretion.
Affirmed in part; reversed in part; the matter is remanded so that the judgment can be modified to eliminate the allowance of prejudgment interest.