SHELTER MUTUAL INSURANCE COMPANY *v.*
Coleman NASH

03-1378                                                    184 S.W.3d 425

Supreme Court of Arkansas
Opinion delivered June 3, 2004

582

*Roy, Lambert & Lovelace*, by: *James M. Roy, Jr.*, and *James H. Bingaman*, for appellant.

*Jeff Slaton*, for appellee.

TOM GLAZE, Justice. This appeal raises a question of first impression regarding when, in an action on an underinsured motorist insurance policy, does the cause of action arise so as to trigger the statute of limitations. The trial court in this case determined that the five-year statute of limitations for contract actions applies, and that the statute does not begin to run until the insurance contract is breached. We agree, and therefore affirm.

The facts of this case were stipulated by the parties. On June 28, 1996, appellee Coleman Nash was involved in an automobile accident in Springdale. Nash was driving southbound on Butterfield Coach Road when Lavisia Rundall ran the red light at Highway 412 and struck Nash's vehicle. Rundall had total insurance coverage of $75,000: $50,000 in a policy on the vehicle with American National, and her own policy of $25,000 with Farm Bureau. At the time of the accident, Nash was insured with appellant Shelter Insurance Company, and had underinsured motorist coverage in the amount of $25,000. Nash filed suit against Rundall on June 25, 1999, almost three years after the accident.

On January 22, 2001, Nash's attorney wrote to Shelter, informing the insurer that he would "be making an underinsured claim at some point . . . on [Nash's] policy." The problem, Nash explained, was that the occurrence happened in June of 1996, and the five-year statute of limitations would expire in June of 2001. Therefore, Nash requested that Shelter "waive any statute of limitations that might be raised until the claim is resolved against the tortfeasor." Shelter responded, declining to waive the statute of limitations. Nash again asked Shelter to waive the statute of limitations on February 27, 2001, and Shelter declined again on March 6, 2001.

On July 21, 2001, American National offered its $50,000 limits to Nash, and on July 30, 2001, Farm Bureau offered its $25,000 policy limits. On August 1, 2001, Nash wrote to Shelter to request permission to settle with Rundall; the letter also made demand for the $25,000 in underinsured benefits under the Shelter policy. Shelter responded on August 7, granting permission for Nash to settle so long as it was "with the understanding that by

allowing you do so in no way implies Shelter Insurance will provide underinsured motorist coverage for [Nash's] claim."

On August 15, 2001, Shelter's attorney wrote to Nash's counsel, advising him that it was Shelter's position that the claim was barred by the statute of limitations. As a result, on September 25, 2002, Nash filed suit against Shelter in Washington County Circuit Court, seeking a declaratory judgment regarding the extent of Shelter's coverage. In its answer, Shelter pointed out that the accident had occurred on June 28, 1996, and no suit had been filed until September of 2002; as such, Shelter claimed, the statute of limitations had expired.

By stipulation filed with the court on February 18, 2003, the parties agreed that the sole issue to be determined by the court was whether or not Nash's claim against Shelter was barred by the applicable statute of limitations. The parties further agreed that, should the court find that the claim was not barred, Nash's damages were agreed to be $10,000, and he would not be required to submit any proof of those damages.

The trial court entered an order on August 19, 2003, concluding that the five-year statute of limitations for a contract action should apply, and further finding that the majority of jurisdictions to consider the issue of when the statute of limitations begins to run has concluded that the cause of action accrues either 1) when the underlying tort claim is settled or brought to judgment, or 2) when the insurance contract is breached, "typically when the insured's claim is denied."[1] Under either of these two approaches, the trial court found, Nash's cause of action did not accrue until Shelter denied his underinsured motorist claim on August 7, 2001, when both the settlement of the tort case and the denial of insurance coverage occurred. Therefore, the court concluded, Nash's complaint, filed on September 25, 2002, was timely. Thus, in accordance with the stipulation entered into by the parties, the court declared that Nash was entitled to damages in the amount of $10,000.

---

[1] The court also noted two other approaches: a minority of courts that hold the cause of action accrues and the statute of limitations begins to run on the date of the accident; and Mississippi, which takes the position that the statute of limitations begins to run "once someone, who possesses uninsured motorist coverage, knows or reasonably should know . . . [that damages] exceed the limits of insurance available to the alleged tort-feasor." *See Jackson v. State Farm Mutual Automobile Ins. Co.*, 852 So.2d 641, 2003 WL 282693 (Miss. 2003).

From this order, Shelter has appealed, arguing two points for reversal: 1) the trial court erred in finding that the five-year contract statute of limitations applied to underinsured motorist claims; and 2) the trial court erred in finding that the applicable statute of limitations begins to run when the underlying tort claim is settled or brought to judgment, or when the insurance contract is breached.

■ This case requires the court to determine whether the trial court correctly construed the law concerning the applicable statute of limitations. This court reviews issues of statutory interpretation *de novo*, as it is for this court to decide what a statute means. *Fields v. Marvell Sch. Dist.*, 352 Ark. 483, 102 S.W.3d 502 (2003). Although we are not bound by a trial court's construction, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.*

■ ■ In its first point on appeal, Shelter argues that the trial court erred in applying the five-year statute of limitations for actions on contracts. The alleged breach of a written contract is controlled by the five-year statute of limitations set out in Ark. Code Ann. § 16-56-111 (Supp. 2001). *See Ray & Sons Masonry v. United States Fidelity*, 353 Ark. 201, 114 S.W.3d 189 (2003). An action for personal injury, however, must be brought within three years after the cause of action accrues. Ark. Code Ann. § 16-56-105 (Supp. 2001). Shelter suggests that, because an insured's ability to recover underinsured motorist benefits "is tied directly to the occurrence of a motor vehicle accident caused by the negligence of the tortfeasor," the accident — a tort — is the triggering event for coverage.

■ However, the vast majority of jurisdictions to have considered this precise question have held that, because any recovery of the insured is based upon the insurance policy, without which no liability could be imposed upon the insurer, the statute of limitations for contract actions controls. *See, e.g., Allstate Insurance Co. v. Spinelli*, 443 A.2d 1286 (Del. 1982); *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775 (Iowa 2000); *Berkshire Mut. Ins. Co. v. Burbank*, 422 Mass. 659, 664 N.E.2d 1188 (1996); *Jacobs v. Detroit Auto. Inter-Insurance Exchange*, 107 Mich. App. 424, 309 N.W.2d 627 (1981); *Grayson v. State Farm Mut. Auto. Ins.*, 114 Nev. 1379, 971 P.2d 798 (1998); *Wille v. Geico Cas. Co.*, 2 P.3d 888 (Okla. 2000); *Pickering v. American Employers Ins. Co.*, 282 A.2d 584 (R.I.

1971); *Schleif v. Hardware Dealer's Mut. Fire Ins. Co.*, 404 S.W.2d 490 (Tenn. 1966); *Alvarez v. American Gen. Fire & Cas. Co.*, 757 S.W.2d 156 (Tex. Ct. App. 1988); *Safeco Ins. Co. v. Barcom*, 112 Wash.2d 575, 773 P.2d 56 (1989); *Plumley v. May*, 189 W. Va. 734, 434 S.E.2d 406 (1993); *Effert v. Heritage Mut. Ins. Co.*, 160 Wis.2d 520, 466 N.W.2d 660 (1990).

▉ Further, we note that Ark. Code Ann. § 23-79-202(a) (Repl. 2004) explicitly addresses the question of when an insured may bring a claim against his or her insurer; that provision provides as follows:

> An *action may be maintained in the courts of this state by an insured* or any other person on his behalf *to recover on any claim or loss arising under a policy of insurance* on property or life *against the insurer issuing the policy* or against the sureties on any bond filed by the insurer as a condition precedent to its right to do business in this state, *at any time within the period prescribed by law for bringing actions on promises in writing.*

(Emphasis added.) Although we have not previously applied this section to an action for underinsured motorist benefits, this court has applied it to a suit for the recovery of life insurance benefits. *See First Pyramid Life Ins. Co. v. Stoltz*, 311 Ark. 313, 843 S.W.2d 842 (1992), *cert. denied* 510 U.S. 908 (1993). Because Nash's suit against Shelter is clearly an action by an insured against the insurer to recover a claim arising under a policy of insurance, we hold that the five-year statute of limitations applies.

In its second argument on appeal, Shelter argues that the trial court erred in determining that the cause of action accrues and the statute of limitations begins to run when the underlying tort claim is settled or brought to judgment, or when the insurance contract is breached. Shelter argues that a cause of action for underinsured motorist benefits accrues at the time of the accident, and therefore, Nash's claim for benefits should have been time-barred even under the five-year statute of limitations, because the accident occurred more than six years before Nash filed suit against Shelter.

▉ Arkansas law is clear that a cause of action accrues the moment the right to commence an action comes into existence, and the statute of limitations commences to run from that time. *Ray & Sons Masonry, supra; Courtney v. First Nat'l Bank*, 300 Ark. 498, 780 S.W.2d 536 (1989). A cause of action for breach of

contract accrues the moment the right to commence an action comes into existence, and occurs when one party has, by words or conduct, indicated to the other that the agreement is being repudiated or breached. *Dupree v. Twin City Bank,* 300 Ark. 188, 777 S.W.2d 856 (1989). In ordinary contract actions, the statute of limitations begins to run upon the occurrence of the last element essential to the cause of action. *Id.*; *Chapman v. Alexander,* 307 Ark. 87, 88, 817 S.W.2d 425, 426 (1991). And if the right of action depends upon some contingency or a condition precedent, the cause of action accrues and the statute of limitations begins to run when the contingency occurs or the condition precedent is complied with. *Id.*

■ The majority of courts that have considered this question have concluded that the statute of limitations begins to run on a cause of action for benefits under an underinsured motorist provision of an automobile insurance policy when the insurance contract is breached. *See Blutreich v. Liberty Mut. Ins. Co.,* 170 Ariz. 541, 826 P.2d 1167 (1991) (limitations period begins to run against the insured only upon an event in the nature of a breach of contract by the insurer); *Eidemiller v. State Farm Mut. Auto. Ins. Co.,* 22 Kan. App. 2d 278, 915 P.2d 161 (1996) (cause of action accrues when the insurer denies liability); *Palmero v. Aetna Cas. & Surety Co.,* 606 A.2d 797 (Me. 1992) (cause of action does not accrue until the insurer denies coverage); *Lane v. Nationwide Mut. Ins. Co.,* 321 Md. 165, 582 A.2d 501 (1990) (statute of limitations does not begin running against the insured until the insurer denies the claim, thereby allegedly breaching the contract); *Berkshire Mut. Ins. Co. v. Burbank, supra* (prior to the time the contract is violated, there is no justiciable controversy); *Jacobs, supra* (cause of action accrues when a contracting party fails to do what he is obligated to do under the contract); *Metropolitan Prop. & Liab. Ins. Co. v. Walker,* 136 N.H. 594, 620 A.2d 1020 ("given the almost uniform view . . . that uninsured motorist insurance claims are subject to the contract statute of limitations, it would be reasonable . . . to focus on the occurrence which constitutes a breach of the contract by the insurer[,] rather than the occurrence of the event giving rise to the contractual claim for insurance benefits"); *Wille, supra* (until a breach of the insurance contract occurs, there is no controversy under the contract upon which a party may sue); *Vega v. Farmers Ins. Co. of Oregon,* 323 Or. 291, 918 P.2d 95 (1996) (unless the insurance policy provides otherwise, the statute of limitations for

an action to enforce an insurer's contractual obligation to pay uninsured/underinsured benefits begins to run when the insurer breaches the contract; generally, that will occur when the insurer denies a claim for uninsured/underinsured benefits, thereby refusing to honor a promise to pay such benefits); *Alvarez, supra* (statute of limitations began to run at the time when insurer denied claim for UM benefits, and not at the time of the incident giving rise to the claim); *Barcom, supra* (no justiciable controversy exists under a contract until a breach actually occurs; therefore, the contract statute of limitations begins to run against an insured on the date of the breach of the contract of insurance by the insurer); *Plumley v. May*, 189 W. Va. 734, 434 S.E.2d 406 (1993) (adhering to the "general consensus" that the statute of limitations does not begin to run until a breach of the contract occurs).

In *Grayson v. State Farm Mutual Insurance Co., supra*, the Supreme Court of Nevada discussed the issue and summarized the holdings of other courts as follows:

> Courts in other jurisdictions have addressed this issue and the overwhelming majority of these jurisdictions have concluded that the limitations period begins to run on a UIM claim upon the insurer's breach of the insurance contract. [Footnote, citing cases so holding, omitted.]
>
> These cases are based on the rationale that it would be illogical to begin the statute of limitations before the insured even has a justiciable claim for breach of contract. *See Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286 (Del. 1982). Although our UIM statutory scheme provides the insured with the option to file a suit against her UIM carrier prior to obtaining a judgment against the tortfeasor [footnote omitted], if the insured chooses not to do so, an action for breach of contract will not lie at the time of the accident because the [underinsured motorist] carrier has not yet been called upon to fulfill a promise under the contract. *See Lane v. Nationwide Mut. Ins. Co.*, 321 Md. 165, 582 A.2d 501 (1990).
>
> Moreover, practically speaking, it would be fundamentally unfair to time-bar an insured from compensation that she bargained for because an insured may not be aware until long after the accident that she will need to pursue a claim against her UIM insurer. Specifically, at the time of the accident or even several years thereafter, the insured may not know the extent of her injuries, the

amount of the tortfeasor's available coverage, or whether the cost of her medical treatment will exceed the value of the tortfeasor's insurance policy and available assets. . . .

Further, the policy underlying UIM insurance supports out conclusion. We note that "[t]he Nevada Legislature intended that uninsured and underinsured motorists benefits be available to Nevada citizens." [Citation omitted.] UIM insurance serves an important public purpose to "provide maximum and expeditious protections to the innocent victims of financially irresponsible motorists." [Citation omitted.] Accordingly, in our view, there is no reason to time-bar an insured from claiming benefits bargained for in an insurance contract by beginning the statute of limitations before the insured is notified that her UIM carrier has failed to fulfill its promise to pay a claim.

*Grayson*, 114 Nev. at 1381-82, 971 P.2d at 799-800.

■ Arkansas has a similar public policy regarding the provision of underinsured motorist benefits. Underinsured motorist coverage was enacted in this state by Act 335 of 1987 to supplement benefits recovered from a tortfeasor's liability carrier; its purpose is to provide compensation to the extent of the injury, subject to the policy limit. *Shepherd v. State Auto Prop. & Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993); *American Cas. Co. v. Mason*, 312 Ark. 166, 848 S.W.2d 392 (1993). In *Birchfield v. Nationwide Ins.*, 317 Ark. 38, 875 S.W.2d 502 (1994), this court explained that, under this act, the legislative intent is clear that the inability to obtain the limits of liability coverage is what triggers the availability of underinsured motorist coverage, which applies when the tortfeasor has at least the amount of insurance required by law but not enough to fully compensate the victim. *Clampit v. State Farm Mut. Auto. Ins. Co.*, 309 Ark. 107, 828 S.W.2d 593 (1992).

■ Because underinsured motorist benefits are not available until it is apparent that the tortfeasor's coverage is insufficient to compensate the insured, we reject Shelter's argument that the statute of limitations begins to run when the accident occurs. To adopt Shelter's reasoning would lead to absurd results, because at the time of the accident, it is impossible for an insured to know the extent of his or her injuries, the extent of the tortfeasor's insurance coverage, and whether the tortfeasor's coverage will be sufficient

to compensate the insured. Further, because Arkansas law is clear that no breach-of-contract cause of action accrues until the contract is breached or repudiated, we follow the majority of jurisdictions that hold that the statute of limitations does not begin to run until the contract of insurance is breached.

In this case, the contract was breached when Shelter refused to pay Nash the underinsured motorist benefits on August 15, 2001. Nash's suit was filed on September 25, 2002, well within the five-year statute of limitations for contract actions. Therefore, the trial court's order awarding Nash underinsured motorist benefits is affirmed.